UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

QUINCY DEWAYNE ROBINSON #113238          CIVIL ACTION NO. 21-cv-4432

VERSUS                                   JUDGE S. MAURICE HICKS, JR.

JULIAN WHITTINGTON ET AL                 MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

Quincy Robinson ("Plaintiff") filed this civil rights action based on allegations that he was not afforded appropriate medical care while housed as a pretrial detainee at the Bossier Maximum Security jail. Before the court are motions for summary judgment by the two groups of defendants. The first motion (Doc. 48) was filed by two nurses, Cyndi Holley and Molli Lyles, who are employed by the Bossier Parish Police Jury to provide medical care for inmates. The second motion (Doc. 74) was filed by Sheriff Julian Whittington, Warden Linton Jacobs, Lieutenant Anthony Evans, and Deputy Joel Freeman. For the reasons that follow, it is recommended that both motions be granted and that all of Plaintiff's claims be dismissed.

**Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). A dispute

is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party.   Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute of material fact.  Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986).  If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine dispute of a material fact.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

**Relevant Facts**

### A.  The Complaint

A complaint is ordinarily not competent summary judgment evidence, but Plaintiff ended his original complaint with a representation pursuant to 28 U.S.C. § 1746 that it was true and correct under penalty of perjury.  Facts (but not legal conclusions) alleged in such a verified complaint may be competent summary judgment evidence.  Huckabay v. Moore, 142 F.3d 233, n. 6 (5th Cir. 1998).

Plaintiff alleges that on October 8, 2021 he was housed in a cell in Bossier Max when Deputy Freeman told him that he was positive for Covid-19 and would be housed in a cell with inmate Collin Seets, who also tested positive.  Plaintiff asked Freeman who authorized the move.  Freeman allegedly said that it was directed by Head Nurse Cyndi Holley, Nurse Molli Lyles, Assistant Warden Anthony Evans, and Warden Jacobs.

Plaintiff alleges that Nurse Holley later told him during a sick call visit that he "was the wrong person" and had not tested positive. Plaintiff alleges that he filed an emergency grievance with Warden Jacobs to complain of the situation, but it was denied. He also alleges that he wrote Sheriff Whittington several times about the risk of staff infecting inmates, the housing arrangements, refusal of some deputies and staff to wear masks, and the like. Plaintiff alleged that the defendants' failure to intervene or act to protect inmates from the disease was done maliciously and sadistically in violation of the Eighth Amendment. Plaintiff does not allege that he contracted Covid-19, and the only health problem he mentions in his complaint is "continued vomiting; headaches, and pain." Plaintiff does not allege the cause or duration of those symptoms.

### B. Evidence from Holley and Lyles

Registered Nurse Cyndi Holley and Licensed Practical Nurse Molli Lyles support their motion for summary judgment with declarations pursuant to 28 U.S.C. § 1746, and a certified copy of Plaintiff's medical records from his stay at Bossier Max. The nurses explain that they were employed by the police jury to work at the jail. Nurse Holley provides background information about the facility, which generally houses between 400 and 430 inmates who are mainly pretrial detainees, with a significant amount of turnover due to new arrestees entering and existing inmates bonding out. Holley states that the staff, during October and November of 2021 (the time at issue in this action), consisted of four full-time members and between eight and ten part-time staff. The police jury also contracted with a Dr. Vincent Lococo, a medical doctor, to provide medical services to

inmates.  He was available by phone and conducted a medical clinic at the jail twice weekly.

Nurse Lyles explains that, even prior to the pandemic, the police jury had policies in place regarding decontaminating medical and dental equipment after use, as well as for the transfer of an inmate outside the facility when his medical problems could not be treated by the medical unit.  After the beginning of the pandemic, the medical unit put in place a set of policies specific to Covid-19 to mitigate the spread of the virus.  The policies were written down in an order signed by Dr. Lococo and were put in place after consulting guidelines from the Centers for Disease Control.  The policies included the use of personal protective equipment, social distancing when allowed, hand hygiene, disinfecting surfaces and equipment, administering Covid-19 tests, and the like.

Nurse Holley offers similar testimony and adds that medical personnel provided education to the inmates with whom they interacted regarding the importance of wearing masks.  They also provided a set of written recommendations for precautions inmates should take, such as washing hands frequently, not sharing food or drink, and not putting their faces up to another inmate's food port.  Inmates were directed to submit a medical request form or "kite" to the medical unit if they experienced symptoms.

Nurse Holley testifies that there was never a shortage of funding for Covid-19 tests at the medical unit.  Inmates who met the standard established by the guidelines were tested.  Dr. Lococo adopted a standing order for suspected Covid or flu, and it was implemented by the staff.  Nurse Holley states that Plaintiff received extensive medical

evaluation and treatment in October and November 2021 from herself, multiple LPNs, and Dr. Lococo.

Nurse Holley states that Plaintiff never tested positive for Covid-19 while housed at Bossier Max. On October 8, 2021, she sent an email that listed inmates who had tested positive and those who had tested negative but were housed in a cell with a positive inmate. Plaintiff tested negative, but he was housed in a cell with a positive-testing inmate, and he was listed as such in the email. Per policy, both groups of inmates were to be moved to different cells to quarantine for ten days. Nurse Holley states that she did erroneously tell Plaintiff that he had tested positive, but she realized immediately that she misspoke and had mixed up Plaintiff with an inmate with a similar name who did test positive, and she explained the error to Plaintiff. No matter her misstatement, Nurse Holley explains, Plaintiff had to be quarantined per the policy because he was a negative but exposed inmate.

Plaintiff's stay at Bossier Max produced 159 pages of medical records. He was given a medical intake questionnaire when he arrived on July 30, 2021. He was taking an antidepressant and reported consuming two 12-packs of alcoholic beverage each day, which produced withdrawal symptoms. He was seen every day in the medical unit for the first week of his stay based on complaints of discomfort due to an STD. He was prescribed medication, and he completed his alcohol withdrawal protocol without issue.

Plaintiff was treated for matters such as an ongoing fungus issue, pain in his right hand after an altercation, suicidal statements, wisdom teeth pain, and a behavioral episode that included incoherent statements and hallucinations. Defendants represent that the records include no mention by Plaintiff or medical staff about any vomiting, headaches, or

pain as mentioned in the complaint. His first complaint of a headache was in December 2021, after the period targeted by the complaint, and Dr. Lococo determined that the headache was a side effect of a medication given to Plaintiff to treat testicular pain. He was prescribed Tylenol to treat the headache. All Covid-19 tests administered to Plaintiff were negative.

Nurse Holley testifies that police jury personnel at the medical unit did not control the location in which inmates were housed. Rather, the sheriff controlled inmate housing at Bossier Max. When medical reasons arose for housing circumstances to be changed, police jury personnel recommended the change of circumstances or location.

### C. Bossier Sheriff's Evidence

Sheriff Whittington and the three defendants employed by him adopt the medical records submitted by the medical staff. They also submit an affidavit from Captain Linton Jacobs, the warden at Bossier Max since July 2021. Jacobs states that the medical staff provided by the police jury dictated Covid guidelines, which the sheriff defendants and other staff followed. He states that any decision relating to testing, treatment, or quarantine of pretrial detainees such as Plaintiff was made by medical personnel, and any action of the sheriff defendants relating to such matters was taken at the direction of medical personnel.

Regarding the housing of Plaintiff with an inmate who tested positive, Jacobs testifies that the move to quarantine was authorized by Nurse Holley and Nurse Lyles, and it was approved by Lt. Evans and Warden Jacobs after the decision was made by medical staff. Attached to his affidavit is the order signed by Dr. Lococo that required certain

inmates be "isolated from the general population."  Among those were any cellmate of a flu or Covid-positive inmate, to be returned to general population only after 14 days and the inmate being asymptomatic.

### D.  Plaintiff's Evidence

In addition to his verified complaint, Plaintiff submitted memoranda (Docs. 53 & 76) that were made under penalty of perjury pursuant to Section 1746.  Plaintiff states in Doc. 53 that, after he was quarantined in a cell with a positive inmate, he objected to the risk and "experienced 'severe' symptoms of 'continued vomiting, headaches, and body pains.'"  He states that his requests for help went "unmanaged."  Plaintiff states that he was not tested but was told that he was not positive for Covid-19.

Plaintiff takes issue with the nurses' description of the number of staff at the facility and the degree of control or influence the medical staff had over housing arrangements. He contends that the sheriff's staff followed the directions of the medical unit.  Plaintiff makes general complaints about inmates not being afforded care at an outside facility.  He also complains of the absence of daily monitoring of oxygen levels, temperature, and pulse as stated in the written policy for quarantined inmates.

Plaintiff complains that medical staff initially refused to pass out protective masks, but they tried to get inmates to purchase masks from the commissary.  He complains that staff, including nurses Holley and Lyles, refused to wear a mask while in contact with inmates and staff.  Plaintiff complains that there was not adequate sanitation of telephones, kiosks, showers, and other areas.  He states that social distancing was impossible, and he complains that staff refused to tell inmates the results of their Covid tests.  Plaintiff

complains that the sheriff did not increase the number of inmate workers/janitors or provide enough dispensable towels, hand sanitizer, or extra toilet paper. He contends that these actions or inactions "placed him at substantial risk of harm from Covid-19" in violation of the constitution.

Plaintiff also complains that his clinical notes do not show that he was given any medical dose pack, Z-pack, vitamins, melatonin, or zinc. The records also lack documentation of daily checks of temperature, pulse, and oxygen levels. He complains generally that the defendants did not strictly and properly implement the written Covid guidelines.

**Analysis**

"The Fourteenth Amendment guarantees pretrial detainees a right 'not to have their serious medical needs met with deliberate indifference on the part of the confining officials.'" Dyer v. Houston, 964 F.3d 374, 380 (5th Cir. 2020), quoting Thompson v. Upshur Cty., Tex., 245 F.3d 447, 457 (5th Cir. 2001). See also Williams v. City of Yazoo, 41 F.4th 416, 423 (5th Cir. 2022). To succeed on a deliberate-indifference claim, a plaintiff must show that (1) the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and (2) the official actually drew that inference.

A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in similar conduct that would clearly evince a wanton disregard for any serious medical needs. Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006).

Page 8 of 13

"Deliberate indifference is an extremely high standard to meet." Domino v. Tex. Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).

Plaintiff expresses his concern that the medical staff and sheriff defendants did not take adequate steps to protect inmates from the spread of Covid-19 in the Bossier Max facility. However, Plaintiff has no standing to assert such general concerns on behalf of other inmates. The court does not micromanage the daily operations of the jail, including the steps taken to prevent or treat illnesses. Federal judges are not policymakers. They are charged with "deciding cases and controversies, not with running state prisons." Valentine v. Collier, 978 F.3d 154, 165 (5th Cir. 2020). And an inmate's mere fear of contracting an illness is not sufficient to state a Section 1983 claim. Roberson v. Larpenter, 2021 WL 2920511, *4 (E.D. La. 2021) (collecting cases). To prevail in this summary judgment contest, Plaintiff must present competent evidence that shows that he, personally, suffered deliberate indifference to a serious medical need.

Plaintiff's medical records and the related testimony reflect that he was afforded extensive care for a variety of ailments. Despite all of Plaintiff's worries about Covid-19, his tests for that disease were negative. He presents no specific evidence that he ever had the illness. Plaintiff suggests that he may have contracted the disease, despite those negative tests, when housed with a positive inmate on quarantine. It is there that Plaintiff alleges he suffered from headaches, vomiting, and body pains.

Corrections officials do not run afoul of the constitution merely because an inmate contracts Covid-19 or another illness. Scott v. MDOC, 2022 WL 4487988, *5 (N.D. Miss. 2022) ("The mere fact that Scott contracted COVID-19 while in MDOC custody does not

Page 9 of 13

show that prison officials evinced a wanton disregard for inmates' serious medical needs"). Officials are not required to take every possible step to sanitize the environment and prevent the spread of contagious diseases. In a case that raised similar challenges to the adequacy of Covid-19 prevention measures taken in a Texas prison, the Fifth Circuit noted: "The Eighth Amendment does not enact the CDC guidelines. Nor does it require TDCJ to implement 'long-term changes' or 'avoid the spread of COVID-19,' and the failure to do so does not 'clearly evince a wanton disregard for any serious medical needs.'" Valentine, 978 F.3d at 164, quoting Gobert v. Caldwell, 463 F.3d at 346.

The constitution demands that jail officials not be deliberately indifferent to a serious medical need. The record reflects that these defendants acknowledged the risks of Covid-19, looked to a medical-based plan to address the situation, and reasonably implemented that plan. Plaintiff complains that the defendants did not comply with every detail of their written plan, but failure to follow internal policies and regulations is not actionable unless it also runs afoul of the constitution. "Our case law is clear ... that a prison official's failure to follow the prison's own policies, procedures[,] or regulations does not constitute a violation of [the Eighth or Fourteenth Amendment], if constitutional minima are nevertheless met." Williams v. Banks, 956 F.3d 808, 812 (5th Cir. 2020), quoting Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996).

Plaintiff's primary complaint is that he was housed with a positive inmate, and he alleges that he became ill during that time. Under the circumstances, which include a lack of unlimited cells and housing, it was not deliberate indifference for the defendants to elect to house an exposed inmate with a positive inmate. Plaintiff presents some evidence that

he became ill, including vomiting and headaches, during this time, but he gives no indication of the duration or severity of those symptoms. Defendants have challenged his ability to present summary judgment evidence of deliberate indifference to a serious medical need, and the rather ordinary symptoms Plaintiff describes are not a serious medical need within the meaning of the constitution.

"A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert, 463 F.3d at 345 n.12. Minor symptoms such as headaches are not normally considered "serious medical needs" for which the constitution mandates prompt medical care. Courteau v. Larpenter, 2020 WL 2771755, *4 (E.D. La. 2020) (collecting cases). In Shorty v. Liddell, 356 Fed. Appx. 769 (5th Cir. 2009) an inmate alleged that medical staff did not provide adequate treatment for headaches, dizziness, weakness, nausea, and vomiting. His medical records showed that he had been treated more than 50 times for various health complaints. The district court granted summary judgment for the defendants, and the Fifth Circuit affirmed. A similar result is warranted in this case.

Plaintiff has not presented any evidence that any individual defendant was aware that Plaintiff suffered from headaches, vomiting, and body pains or was asked to afford care for them. He points to no kite or similar report of such symptoms. The claims against each defendant must be examined separately, particularly when qualified immunity is raised as it has been in this case. Meadours v. Ermel, 483 F.3d 417, 421-22 (5th Cir. 2007). Absent competent evidence showing that any named defendant was deliberately indifferent

to a health problem that rose to the level of a serious medical need, all defendants are entitled to summary judgment.

Accordingly,

It is recommended that the Motion for Summary Judgment (Doc. 48) filed by Cyndi Holley and Molli Lyles and the Motion for Summary Judgment (Doc. 74) filed by Sheriff Julian Whittington, Warden Linton Jacobs, Lieutenant Anthony Evans, and Deputy Joel Freeman be granted.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 26th day of June, 2023.

Mark L. Hornsby
U.S. Magistrate Judge